# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 20-337


**GLENN ALEXANDER**

**VERSUS**

**MAGALIN BLADE**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 263,712
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Candyce G. Perret, Judges.


**REVERSED AND RENDERED.**

**Michael H. Davis**
**2017 MacArthur Dr., Building 4, Suite A**
**Alexandria, LA 71301**
**(318) 445-3621**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Magalin Blade**

**Terry G. Aubin**
**Aubin Law Firm**
**3600 Jackson St., Suite 107**
**Alexandria, LA 71303**
**(318) 561-7000**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Glenn Alexander**

**EZELL, Judge.**

Magalin Blade appeals the decision of the trial court in favor of her ex-husband, Glenn Alexander, partially vacating and dissolving a Qualified Domestic Relations Order (QDRO) dated December 13, 2002. For the following reasons, we hereby reverse the decision of the trial court, but render judgment in favor of Mr. Alexander.

Mrs. Blade and Mr. Alexander were married on August 30, 1980. The couple filed for divorce on January 28, 1999. In 2001, the parties agreed to a community property settlement establishing that each would divide their respective retirement plans according to the formula established by *Sims v Sims*, 358 So.2d 919 (La.1978). In 2002, the parties began a series of attempts at drafting a QDRO that would satisfy each party's retirement system.

The first attempt to draft a QDRO clearly set forth that each party sought to provide the other with survivor benefits upon retirement. Mrs. Blade's retirement system, the Teachers' Retirement System of Louisiana (TRSL), rejected the survivor benefits language. The parties then submitted a draft letter with proposed language again including the agreed-upon survivor benefits provision, which was again rejected by TRSL. A third attempt at a domestic relations order was submitted, which followed TRSL's model language and did not include survivor benefits. This order was accepted and approved by TRSL on July 1, 2002. However, after the model language QDRO was accepted by TRSL and became final, the parties attempted yet again to revise that order to provide Mr. Alexander with survivor benefits. A December 13, 2002 QDRO containing the reciprocal survivor benefits language was submitted yet again to TRSL and to Mr. Alexander's retirement system, Central States, Southeast and Southwest Areas

Pensions Fund (Central States). Central States approved the QDRO, but once again, TRSL rejected the survivor benefits language.

On June 4, 2018, Mrs. Blade retired from the Rapides Parish School System. Upon retirement, she made an irrevocable choice to receive the maximum retirement benefit, permanently shutting Mr. Alexander out of the possibility of receiving any survivor benefits. On December 12, 2018, Mr. Alexander filed suit to partially dissolve the community property partition and the December 13, 2002 QDRO, which required him to still provide Mrs. Blade with survivor benefits at a cost to him of a reduced retirement benefit. Alternatively, he prayed that Mrs. Blade be enjoined from enforcing the survivor benefits portion of the December 13, 2002 QDRO.

After trial on the matter, the trial court below found that the parties had entered into an extrajudicial community property agreement providing that, upon retirement, each party would provide the other with a fifty percent survivor benefit through his or her own retirement system. The trial court noted that Mrs. Blade had not complied with that agreement and that to force Mr. Alexander to be bound by terms Mrs. Blade did not follow would be plainly inequitable. Accordingly, the trial court issued a judgment partially vacating and dissolving QDROs rendered May 6, 2002, and December 13, 2002, thereby dissolving each party's obligation to provide the other with survivor benefits. From that decision, Mrs. Blade appeals.

On appeal, Mrs. Blade asserts two assignments of error. She claims that the trial court erred in vacating the portion of the December 13, 2002 QDRO granting her survivor benefits from Mr. Alexander's Central States retirement fund. She further claims that the trial court erred in finding that she violated her obligations under her QDRO by failing to choose a retirement benefit of fifty percent at the

time of her retirement. We find some merit in her first assignment of error and accordingly reverse the decision of the trial court. However, while we may not agree with the route in which the trial court below reached its conclusion, we agree with its ultimate line of reasoning as to the fundamental outcome of this case. Therefore, we render judgment in favor of Mr. Alexander.

Mrs. Blade properly notes that once a QDRO is approved by a plan administrator, it becomes a final judgment. As noted in *Pembo v. Pembo*, 17-1153, 17-1154, pp. 6-7 (La.App. 1 Cir. 6/28/19), 280 So.3d 656, 660 (citations omitted):

> Under the express provisions of Section 9:2801B, a judgment or domestic relations order partitioning retirement benefits is interlocutory and subject to amendment only until the order is granted "qualified" status by the plan administrator. By specifically limiting the time period within which the judgment or order can be amended, the legislature has precluded amendment thereafter. The clear legislative intent is that once qualified, a QDRO has the same finality as a final judgment partitioning the retirement benefits.
>
> . . . .
>
> . . . . Substantive amendments to judgments can be made only by consent of the parties or after a party has successfully litigated a timely application for new trial, an action for nullity, or a timely appeal.

Mrs. Blade claims that Mr. Alexander failed to properly file an action for nullity, as his petition was not specifically entitled as such. We disagree. "Louisiana is a fact pleading state that values substance over form and does not require the use of magic titles or terminology as a threshold requirement for validly pleading an action." *Wheat v. Nievar*, 07-680, p. 5 (La.App. 1 Cir. 2/8/08), 984 So.2d 773, 776. Courts should look beyond the caption of pleadings in order to ascertain their substance and to do substantial justice to the parties. *Smith v. Cajun Insulation, Inc.*, 392 So.2d 398, (La.1980). *See also* La.Code Civ.P. art. 865. We read Mr. Alexander's "Suit to Partially Dissolve Community Property Partition and

3

other Relief" to include sufficient facts to establish that he sought to annul the QDRO at issue, as did the trial court.

However, we do agree with Mrs. Blade's argument that an action for nullity requires proof that a final judgment may only be nullified if it was obtained by fraud or ill practices. Louisiana Code of Civil Procedure Article 2004(A) (emphasis ours) states that "[a] final judgment *obtained by* fraud or ill practices may be annulled." There is no evidence in the record that Mrs. Blade committed fraud at the time the QDRO was issued. Rather, the actions she took over fifteen years after the QDRO became a final judgment present the problems at issue here. While she unquestionably did not act as required by her agreement to provide reciprocal survivor benefits with Mr. Alexander, the parties drafted the 2002 QDROs together and were each fully aware at the time of what they contained. Nothing she did in 2002 arose to the level of fraud or ill practices required to nullify those judgments. Accordingly, the trial court erred in nullifying the QDROs and we hereby reverse that decision.

However, as noted above, we do agree with the trial court's ultimate line of reasoning and the ultimate outcome reached in this case. In his petition, Mr. Alexander alternatively sought an injunction against Mrs. Blade preventing her from enforcing the QDRO provision applying to his retirement system granting Mrs. Blade survivor benefits. It is well established law that our courts of appeal shall render any judgment that is just, legal, and proper based upon the record on appeal. La.Code Civ.P. art. 2164. "The purpose of this article is to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the

4

court below." La.Code Civ.P. art. 2164, comment (a). We find that Mr. Alexander is entitled to such a judgment based on the record before us.

"To obtain injunctive relief . . . a party must prove irreparable injury under La. C.C.P. art. 3601 in addition to the necessary showing of real damage." *Parish of East Feliciana ex rel. East Feliciana Parish Police Jury v. Guidry*, 04-1197, p. 14 (La.App. 1 Cir. 8/10/05), 923 So.2d 45, 53, *writ denied*, 05-2288 (La. 3/10/06), 925 So.2d 515. Additionally, La.Code Civ.P. art. 3601, provides in pertinent part: "[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law." A permanent injunction can only be issued under La.Code Civ.P. art. 3601 "after a trial on the merits in which the burden of proof is a preponderance of the evidence." *Parish of East Feliciana*, 923 So.2d at 53.

"In case of reciprocal obligations, the obligor of one may not be put in default unless the obligor of the other has performed or is ready to perform his own obligation." La.Civ.Code art. 1993. It is clear from the record before the court that the couple agreed to reciprocal benefits wherein each would provide survivor benefits to the other upon retirement. Not only is this established by Mr. Alexander's uncontradicted testimony, but it is further evident from the multiple, repeated attempts to establish such a benefit for Mr. Alexander with the TRSL. In fact, after the TRSL accepted Mrs. Blade's QRDO without language setting forth the right to survivor benefits for Mr. Alexander, the couple tried to insert that benefit yet again. All told, including a letter seeking approval of draft language, the parties tried three times to get the TRSL to grant Mr. Alexander such a benefit. The intent on the part of both parties to establish reciprocal survivor benefits is crystal clear to us, as it was to the trial court.

When Mrs. Blade made her retirement election, she made an irrevocable decision preventing Mr. Alexander from receiving the agreed-upon benefits. Her decision was permanent and unchangeable, rendering it impossible for her to meet her obligations and causing Mr. Alexander irreparable injury. In the words of the trial court, "she didn't give him what she said she was going to give him, and he had already given it to her." However, Mrs. Blade testified that she fully expected to receive from Mr. Alexander's retirement system the very right she irreversibly denied Mr. Alexander. This is facially unjust.

Under Mrs. Blade's reasoning, Mr. Alexander should have to perform a unilateral obligation and suffer a lifetime reduction in monthly pension benefits, for her sole benefit, while being unable to potentially receive the reciprocal, agreed-upon survivor benefits from her retirement system. Should he not, he would be faced with the threat of suit to enforce a right that he had no chance of receiving from Mrs. Blade in return. We reject her line of thinking. Her decision has denied Mr. Alexander a plainly agreed-upon right, and enforcement of the provision providing her the same would clearly be inequitable. Accordingly, we find that she should not be allowed to enforce her right to survivor benefits. Based on the record before us, we hereby render judgment awarding Mr. Alexander a permanent injunction against Mrs. Blade, enjoining her from enforcing the survivor benefits provision of the December 13, 2002 domestic relations order.

For the above reasons, we hereby reverse the decision of the trial court. However, we render judgment in favor of Glenn Alexander issuing a permanent injunction against Magalin Blade, enjoining her from enforcing the survivor

6

benefits provision of the December 13, 2002 domestic relations order.  Costs of this appeal are hereby assessed against Mrs. Blade.

**REVERSED AND RENDERED.**